CASE NO. 10-2348

IN THE
# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

EMILY KROLL
*Plaintiff-Appellant*

v.

WHITE LAKE AMBULANCE AUTHORITY
*Defendant-Appellee,*

On Appeal from the United States District Court
for the Western District of Michigan
Southern Division

BRIEF OF APPELLANT

Oral Argument Requested

Bradley K. Glazier (P35523)
BOS & GLAZIER, P.L.C.
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503-1423
(616) 458-6814
*Counsel for Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Cir. R. 26.1, Complainant-Appellant, Emily C. Kroll, makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?

**No.**

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

**None affiliated with Ms. Kroll.**


Date: December 1, 2010              _/s/ Bradley K. Glazier_
                                    Bradley K. Glazier

i

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, v, vi

STATEMENT IN SUPPORT OF ORAL ARGUMENT . . . . . . . . . . . . . . . . . . vii

APPELLANT'S JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A.    The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   B.    The Personnel Policies at WLAA . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   C.    The Performance of Emily Kroll . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   D.    WLAA's Practice of Mandating Counseling
         for its Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   E.    WLAA's Ultimatum to Ms. Kroll - Supervised
         Counseling or Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   F.    The Events of April 28, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   G.    EEOC Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   H.    The Proceedings in the Trial Court . . . . . . . . . . . . . . . . . . . . . . . . 11

III.  ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B.  The Trial Court Erred in Finding that the Psychological
       Treatment Compelled by WLAA Would Not Have
       Included a "Medical Examination" as Defined by the ADA . . . . . . 13

          1.  A "Clinical Evaluation" Performed by a
              Psychologist Is a Medical Examination under
              the ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          2.  A Reasonable Inference from the Evidence
              Presented Is that a Clinical Evaluation Would
              Have Been Performed as Part of the Psychologist's
              Treatment Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV.  CONCLUSION AND RELIEF SOUGHT  . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF CASES, CITATIONS, AND AUTHORITIES

Page

Cases

*Agristor Financial Corp. v. Van Sickle,*
    967 F.2d 233 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242; 106 S.Ct. 2505; 91 L.Ed.2d 202 (1986) . . . . . . . . . . . . 12, 13

*Barnes v. Cochran,*
    944 F.Supp. 897 (S.D. Fla. 1996) . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18, 21

*Borgus v. Smithkline Beecham Corp.,*
    No. 02-CV-6472, 2004 WL 2095534, (W.D.N.Y. 2004) . . . . . . . . . . . . . 18

*Cincinnati Ins. Co. v. Zen Design Group, Ltd.,*
    329 F.3d 546 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Intera Corp. v. Henderson,*
    428 F.3d 605 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jackson v. Lake County,*
    No. 01-C-6528, 2003 WL 22127743 (N.D. Ill. 2003) . . . . . . . . . . . . . . . 26

*Jaques v. Herbert,*
    477 F. Supp. 2d 858 (N.D. Ohio 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Karraker v. Rent-A-Center, Inc.,*
    411 F.3d 831 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Law v. Garden State Tanning,*
    159 F. Supp. 2d 787 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

iv

*Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574; 106 S.Ct. 1348; 89 L.Ed.2d 538 (1986) . . . . . . . . . . . . . . 12

*Reeves v. Sanderson Plumbing Products, Inc.,*
    530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 25

*Russell v. Delco Remy Div. Of General Motors Corp.,*
    51 F3d 746 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Schaffer v. A.O. Smith Harvestore Prod. Inc.,*
    74 F.3d 722 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Scott v. Napolitano,*
    717 F. Supp. 2d 1071 (S.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 26


Statutes and Regulations

29 C.F.R. §1630.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. §12101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §12112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14


Court Rules

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20

Fed. R. Civ. P. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

Fed. R. App. P. 4(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>Other</u>

Enforcement Guidance: Disability Related Inquiries and
Medical Examinations of Employees Under the Americans
With Disabilities Act, No. 915.002 (July 27, 2000) . . . . . . . . . . . 15, 16, 20, 25, 26

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant, Emily C. Kroll, requests oral argument. This appeal involves an issue of first impression in the Sixth Circuit over the interpretation of the medical examination provisions of the Americans with Disabilities Act. Oral argument will assist this Court in reaching a full understanding of the underlying facts, and the claims on appeal. Accordingly, Appellant believes that oral argument is appropriate and would assist the Court of Appeals.

## **APPELLANT'S JURISDICTIONAL STATEMENT**

The United States District Court for the Western District of Michigan had jurisdiction over this case pursuant to 28 U.S.C. § 1331, federal question jurisdiction, as plaintiff's claims arose under 29 U.S.C. § 12101, *et. seq*., the Americans with Disabilities Act of 1990.

The Sixth Circuit Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Plaintiff filed a notice of appeal on October 18, 2010, (R. 62) from the district court's Memorandum Order Denying Plaintiff's Motion to Alter or Amend Judgment (R. 61) relating to the court's Order Granting the Defendants' Motion to Dismiss and for Summary Judgment (R. 58). The district court's order denying plaintiff's motion and dismissing plaintiff's complaint was entered on September 20, 2010 (R. 61). The order denying plaintiff's motion to alter or amend the judgment was a final order that disposed of all the claims raised by the parties. Plaintiff's appeal was filed within 30 days following entry of the final order and was timely filed under Fed. R. App. P. 4(A).

## <u>STATEMENT OF ISSUES FOR REVIEW</u>

1.      Is Employer Compelled Psychological Treatment Regulated by the Provisions in the Americans with Disabilities Act Prohibiting Medical Examinations Unless Such Examinations are Shown to be Job Related and Consistent with Business Necessity?

The Appellant says - Yes.

The Appellee says - No.

The Lower Court says - No.


2.      Did the Lower Court Draw Inferences from the Record Evidence in Favor of the Moving Party and Against the Non-Moving Party as Prohibited by Fed. R. Civ. P. 56 when the Court Concluded that the Compelled Psychological Treatment Demanded by Plaintiff's Employer Would not Include a Medical Examination?

The Appellant says - Yes.

The Appellee says - No.

The Lower Court says - No.

# I.

## STATEMENT OF THE CASE

This lawsuit asserts that defendant White Lake Ambulance Authority ("WLAA") violated the Americans With Disabilities Act ("ADA"). The ADA prohibits an employer from requiring employees to undergo a medical examination or inquiring about disabilities unless the examination or disability is shown to be job related and consistent with business necessity.

Plaintiff Emily Kroll's employment ended when she refused WLAA's demand that she undergo a psychological treatment. The district court granted WLAA's motion for summary judgment, ruling that the compelled psychological treatment was not a "medical examination" or a disability inquiry under the ADA. Because the court was wrong about this legal conclusion and because the court improperly drew factual inferences in favor of WLAA in order to support its conclusion, the district court erred and this court should reverse and remand this case for a trial on the merits.

# II.

## STATEMENT OF FACTS

### A.    The Parties.

Emily Kroll is a 33 year-old woman who lives in Whitehall, Michigan. Ms.

Kroll worked as a part-time emergency medical technician specialist ("EMT") for WLAA (Plaintiff's brief, R. 51, Exhibit 9, Binns dep, p. 38, ln. 13-17). She was employed from September 2003 until April 28, 2008. (Plaintiff's brief, R. 51, Exhibit 14, Kroll dep, p. 22, ln. 15-17). Ms. Kroll was paid to be "on call" for various shifts and was paid a per diem for each ambulance run that she took during her on-call shifts. Ms. Kroll estimates that she was scheduled to work around 20 to 22 - 8 hour shifts every two-week pay period. (Plaintiff's brief, R. 51, Exhibit 14, Kroll dep, p. 23, ln. 17 - p. 24, ln. 1).

WLAA provides emergency medical transportation services to the communities in the Whitehall and Montague area west of Grand Rapids, Michigan. During Emily Kroll's tenure with WLAA, the Director was Brian Binns. Jean Dresen was the Office Manager. (Plaintiff's brief, R. 51, Exhibit 11, Dresen dep, p. 11). Mr. Binns reported to a Board of Directors. (Plaintiff's brief, R. 51, Exhibit 9, Binns dep, p. 25).

**B.     The Personnel Policies at WLAA.**

WLAA adopted a Personnel Policies and Procedure Manual that included sections on work rules and the discipline and discharge of employees. (Plaintiff's brief, R. 51, Exhibit 1, Section R, p. 5-7). The manual called for progressive discipline, "taking into account the nature of the offense, the work record of the

4

employee and other extenuating circumstances." (*Id.,* p. 7). The manual was distributed to employees who acknowledged receipt of the document. (Plaintiff's brief, R. 51, Exhibit 2). The purpose of the WLAA policy manual was to notify employees about "a list of things that [they] should not be doing, and if [they] do engage in this conduct [they] will receive discipline for doing so." (Plaintiff's brief, R. 51, Exhibit 9, Binns dep, p. 34, ln. 5-10).

### C.    The Performance of Emily Kroll.

Ms. Kroll received no discipline and did not break any of the work rules at WLAA. (Plaintiff's brief, R. 51, Exhibit 11, Dresen dep, p. 43; Exhibit 9, Binns dep, p. 59, 65). In fact, all of the witnesses who offered an opinion about Ms. Kroll agreed that she had good to very good skills as an EMT. For example, Brian Binns could not recall an ambulance call where Ms. Kroll was not doing her job properly. (Plaintiff's brief, R. 51, Exhibit 9, Binns dep, p. 56, ln. 5-7). When asked about Ms. Kroll's performance evaluations, Mr. Binns testified as follows:

Q    And during the time period that Emily Kroll worked for you is it your recollection that when you sat down and had your verbal discussions regarding her performance that you always gave her a good performance evaluation?

A    I don't remember an annual review with her, but there were times when I would look at her run sheet or I would be aware of something that happened or somebody told me how the call went and they included Emily. And I would say, you know, good job. Good job, keep it up.

Q      Do you recall if you ever issued a suspension against Emily Kroll?

A      Never.

Q      Did you ever issue a written warning against Emily Kroll?

A      No.

Q      Do you recall ever giving her a verbal reprimand?

A      I might have.  I can't think of an employee that didn't receive a verbal reprimand at one time or another.

Q      Do you recall any specific verbal reprimand that you gave to Emily Kroll?

A      I can't remember right now.

(Plaintiff's brief, R. 51,  Exhibit 9, Binns dep, p. 58, ln. 25 - p. 59, ln. 19).

Jeffrey Holmstrom described Ms. Kroll's skill set as "very good" and their working relationship as "good." (Plaintiff's brief, R. 51, Exhibit 13, Holmstrom dep, p. 4).  Mark Terpstra described Emily Kroll as a "good EMT" who did well in taking care of patients and following protocol.  (Plaintiff's brief, R. 51, Exhibit 17, Terpstra dep, p. 38, ln. 17-24).  Jodi Osborn described Ms. Kroll as "very good partner" who "could communicate well." (Plaintiff's brief, R. 51, Exhibit 15, Osborn dep, p. 9, ln. 15-23).

On April 23, 2008, Emily Kroll received a letter from the Muskegon County Medical Control Authority, commending her for being "a really good EMT that is

6

committed to provide the best care possible." (Plaintiff's brief, R. 51, Exhibit 3).

### D.     WLAA's Practice of Mandating Counseling for it Employees.

In the mid-1980's, Brian Binns learned that one of the WLAA employees, Jeff Holmstrom, a paramedic, was involved in sexual relationships outside of marriage. (Plaintiff's brief, R. 51, Exhibit 9, Binns dep, p. 41-42). Mr. Binns described Jeff Holmstrom as a "skirt chaser" who was dating "married women or women who were committed to other individuals." (*Id.*, p. 41, ln. 23 - p. 42, ln. 6). Because of Mr. Holmstrom's sexual proclivities, Mr. Binns required Mr. Holmstrom to undergo psychological counseling as a condition of keeping his job at WLAA. (*Id.*, p. 40, ln. 2 - p. 41, ln. 2).

In 1993, Mr. Binns heard that Kathie Sturgis, an EMT, was dating a married man. (Plaintiff's brief, R. 51, Exhibit 16, Sturgis dep, p. 13, ln. 24 - p. 14, ln. 1). Mr. Binns required Ms. Sturgis to undergo psychological counseling to keep her job. (*Id.*) Although the counselor authorized Ms. Sturgis to return to work, Mr. Binns refused to rehire her. (*Id.*, p. 14, ln. 10-14).

As noted in defendant's summary judgment brief, WLAA was similarly concerned that plaintiff was "involved in sexual relationships with married men." (Defendant's brief, R. 50, p. 3). Mr. Binns equated Ms. Kroll's interest in men to Mr.

Holmstrom's reputation as a skirt chaser. (Plaintiff's brief, R. 51, Exhibit 9, Binns dep, p. 41).

### E.    WLAA's Ultimatum to Ms. Kroll - Supervised Counseling or Termination.

Around April 21, 2008, Jean Dresen approached Ms. Kroll about psychological counseling. (Plaintiff's brief, R. 51, Exhibit 11, Dresen dep, p. 35, ln. 22-25, p. 39, ln. 17-22). Ms. Dresen believed that Ms. Kroll could be helped by someone who could counsel her on mental health issues. (Plaintiff's brief, R. 51, Exhibit 11, Dresen dep, p. 37, ln. 20-23). Ms. Dresen is not an expert in the mental health field. (*Id.*) Ms. Dresen did not speak with any health care providers regarding her opinion that Ms. Kroll needed psychological counseling. (*Id.,* p. 37, ln. 3-19). She only spoke with Mr. Binns, who has no psychology background. (*Id.*) Nor did she talk with any psychiatrists, psychologists, or medical doctors about whether Ms. Kroll presented a direct threat to herself or others at WLAA. (*Id.*)

Ms. Dresen told the plaintiff that she would need to make her own financial arrangements for the counseling as WLAA would not pay for it. (Plaintiff's brief, R. 51, Exhibit 11, Dresen dep, p. 39, ln. 18-22). Ms. Dresen also asked Ms. Kroll to sign an authorization permitting WLAA to access her medical records. (*Id.,* p. 39, ln. 23 - p. 40, ln. 22-24). Ms. Kroll did not agree to attend counseling as a condition of her employment.

8

**F.    The Events of April 28, 2008.**

On April 28, 2008, Ms. Kroll participated in an ambulance run with Jodi Osborn, a paramedic with WLAA.  During the run, Ms. Osborn called Ms. Kroll a whore who was only good for getting down on her knees. (Plaintiff's brief, R. 51, Exhibit 14, Kroll dep, p. 157, ln. 18-23).  This accusation followed the inadvertent forwarding of a text message from Emily Kroll to Jodi Osborn about whether Ms. Kroll's former boyfriend, Josh Easton, ever had sex with Jodi Osborn. (Defendant's brief, R. 50, Exhibit O).

After returning to the WLAA garage from the ambulance run, Ms. Osborn asserted that Ms. Kroll had failed to follow her orders with regard to administering oxygen to the patient. (Plaintiff's brief, R. 51, Exhibit 15, Osborn dep, p. 35).  Ms. Kroll denies this accusation.  No incident report was ever filed with regard to the alleged insubordination of Ms. Kroll, and no discipline was ever issued to Ms. Kroll regarding this incident. (Plaintiff's brief, R. 51, Exhibit 15, Osborn dep, p. 35, ln. 25 - p. 36, ln. 8).  According to Ms. Osborn, when Ms. Kroll refused to provide the patient with oxygen upon her request, Ms. Osborn did it herself. (*Id.,* p. 35).

Ms. Kroll approached Mr. Binns later that day.  During the meeting, Mr. Binns told Ms. Kroll that if she did not agree to get counseling then she could no longer work for WLAA, and that she was required to meet with Mr. Binns when she

9

completed the mandated counseling. (Plaintiff's brief, R. 51, Exhibit 13, Holmstrom dep, p. 10, ln. 23 - p. 11, ln. 5).

According to Mr. Binns, the decision to compel medical treatment was not based on Ms. Kroll's performance but because "her life was a mess and we could help her." (Plaintiff's brief, R. 51, Exhibit 9, Binns dep, p. 66). "I never had a problem with her as far as patient care." (*Id.*) Mr. Binns told Ms. Kroll that she needed counseling "because of immoral personal behavior" and brought up assertions that she was "picking men up from the bar." (Plaintiff's brief, R. 51, Exhibit 14, Kroll dep, p. 174, ln. 18-25 - p. 175, ln. 1). At that point, Ms. Kroll put her pager and keys on Mr. Binns's desk and left the building. Ms. Kroll was not scheduled for any shifts following this incident.

## G.    EEOC Charges.

On May 30, 2008, plaintiff filed a sex-discrimination complaint with the Michigan Department of Civil Rights ("MDCR") and the Equal Employment Opportunity Commission ("EEOC"). (Plaintiff's brief, R. 51, Exhibit 4). On February 23, 2009, plaintiff filed a charge with the EEOC, asserting that defendant violated the ADA by making her agree to receive psychological counseling and treatment as a condition of her employment. On July 28, 2009, the EEOC issued plaintiff a right to sue letter relating to her complaints of sex discrimination under

10

Title VII. (Plaintiff's brief, R. 51, Exhibit 5).  On June 22, 2009, the EEOC issued

plaintiff a right to sue letter relating to her complaints of discrimination under the

ADA. (Plaintiff's brief, R. 51, Exhibit 6).

## H.    The Proceedings in the Trial Court.

The plaintiff's complaint was filed on July 9, 2009.  Following the close of

discovery, defendant WLAA filed a motion for summary judgment, asserting that it

met the test for showing "business necessity" and that the treatment it compelled the

plaintiff to undergo was related to her job.  (Defendant's brief, R. 50, p. 10-13).

Although defendant included one paragraph in its brief asserting that the forced

psychological treatment was not a medical examination, defendant did not cite any

statute, case law,  or record evidence as support for this assertion.  (*Id.,* p. 10).  The

court granted the defendant's motion, but not on the grounds sought by WLAA.  The

court found that it "need not determine whether WLAA had a reasonable basis to

justify its demand that Kroll attending counseling because, contrary to Kroll's claim,

counseling alone does not constitute a medical examination under the ADA."

(Opinion, R. 57, p. 6).

The plaintiff filed a motion, pursuant to Fed. R. Civ. P. 59(e), to alter or amend

the court's order. On September 20, 2010, the court denied the plaintiff's motion and

this appeal followed.

11

# III.

# ARGUMENT

## A.    Standard of Review.

Plaintiff appeals from the trial court's order granting the defendant's motion for summary judgment and the court's order denying the plaintiff's motion for reconsideration. Summary judgment orders are reviewed de novo. *Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 551, 552 (6th Cir. 2003). In deciding a motion for summary judgment, the Court should determine whether there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587; 106 S.Ct. 1348; 89 L.Ed.2d 538 (1986). The facts are to be considered in a light most favorable to the non-moving party, and "... all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod. Inc.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255; 106 S.Ct. 2505; 91 L.Ed.2d 202 (1986)) (other citations omitted).

It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

12

that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. "Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

While Fed. R. Civ. P. 59 does not discuss the specific reasons for granting a Rule 59 motion, the Sixth Circuit has held that a court should alter a judgment if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *See*, *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).

**B.    The Trial Court Erred in Finding that the Psychological Treatment Compelled by WLAA Would Not Have Included a "Medical Examination" as Defined by the ADA.**

The ADA prohibits employers from demanding that employees undergo medical examinations unless such examinations are shown to be "job related and consistent with business necessity." 42 U.S.C. §12112(d)(4)(A). The statute states:

13

A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job related and consistent with business necessity.

The regulations promulgated under the ADA confirm those two requirements. See 29 C.F.R. §1630.14. Subsection (B) of this portion of the ADA provides that employers may "conduct voluntary medical examinations" "which are part of an employee health program available to employees at that work site." 42 U.S.C. § 12112(d)(4)(B). But involuntary examinations are restricted to circumstances where the medical condition at issue is shown to be both "job related" and "consistent with business necessity." 42 U.S.C. §12112(d)(4)(A).

The issue in this appeal is not whether WLAA's decision to compel Emily Kroll to secure medical treatment met the requirements of job relatedness or business necessity. In its Opinion, the trial court stated: "The court need not determine whether WLAA had a reasonable basis to justify its demand that Kroll attend counseling sessions...." The court never reached this issue because it held that, "contrary to Kroll's claim, counseling alone does not constitute a medical examination under the ADA." (Opinion, R. 57, p. 6). However, for the reasons outlined below, a reasonable inference to be drawn from the evidence presented in the summary judgment documents was that the counseling and therapy mandated by WLAA for

14

Emily Kroll included a "clinical evaluation" or a "psychological evaluation," and such evaluations are regulated by the ADA.

### 1.    A "Clinical Evaluation" Performed by a Psychologist Is a Medical Examination under the ADA.

The court's Opinion states that neither the ADA nor the regulations and interpretative guidance issued by the EEOC define the term "Medical Examination." (Opinion, R. 57, p. 6).   However, the EEOC's enforcement guidance does include a definition of the term "Medical Examination."  The guidance document states as follows:

> 2.    What is a "medical examination"?
>
> A "medical examination" is a procedure or test that seeks information about an individual's physical or mental impairments or health.

EEOC, *Enforcement Guidance: Disability Related Inquiries and Medical Examinations of Employees under the Americans With Disabilities Act*, No. 915.002, ¶ 2 (July 27, 2000), *available at* http://www.eeoc.gov/policy/docs/guidance-inquiries.html ("EEOC Enforcement Guidance"). (Plaintiff's brief, R. 51, Exhibit 8).

According to the EEOC, "psychological tests that are designed to identify a mental disorder or impairment" are "medical examinations," while "psychological tests that measure personality traits such as honesty, preferences, and habits" are not.

15

*Id.* The EEOC also lists seven factors that "may be relevant in determining whether a test or procedure is a medical examination." *Id.* Those factors are:

(1)    Whether the test is administered by a health care professional;

(2)    Whether the test is interpreted by a health care professional;

(3)    Whether the test is designed to reveal an impairment of physical or mental health;

(4)    Whether the test is invasive;

(5)    Whether the test measures an employee's performance of a task or measures his/her physiological responses to performing a task;

(6)    Whether the test is normally given in a medical setting; and

(7)    Whether medical equipment is used.

*Id.*

"One factor may be enough to determine that a test or procedure is medical." EEOC Enforcement Guidance, ¶ 2.  In *Barnes v. Cochran*, 944 F. Supp. 897 (S.D. Fla. 1996), the court found that a psychologist's "clinical evaluation" was a prohibited "medical examination" under the ADA.  In the *Barnes* case, the court considered whether a sheriff department's pre-employment psychological evaluation of a corrections deputy applicant constituted a prohibited pre-offer medical examination under the ADA.  The court in the *Barnes* decision found that it was and stated:

This conclusion is compelled by the nature and extent of the examination performed, as reflected in Dr. Stock's report, and by the fact

16

that the examination was performed by a limited licensed psychologist. Dr. Stock's report reflects that plaintiff was referred for a "clinical evaluation." Dr. Stock's questions covered not only a wide range of incidents in plaintiff's life, but probed areas tending to disclose specific psychological disabilities, such as Post-Traumatic Stress Disorder.

*Id.* at 904.

The court in *Barnes* rejected the defendant's argument that the only medical examinations that are impermissible under the ADA are those where the examiner intends to determine whether the applicant has a disability. *Id.* at 904. Other courts have agreed that administration of the MMPI, even without an evaluation of the test results by a psychologist, is a "medical examination" under the ADA. *See, Karraker v. Rent-A-Center, Inc.,* 411 F.3d 831 (7th Cir. 2005).

The district court's summary judgment opinion did not address the *Barnes* decision. But the court did address *Barnes* in its Memorandum Order denying plaintiff's Rule 59 motion. The court stated that, "the cases Kroll cites, however, are materially different from this case." (Memorandum Order, R. 61, p. 2). The court stated: "In *Barnes v. Cochran,* 944 F. Supp. 897 (S.D. Fla. 1996), the plaintiff, a rejected applicant for a corrections deputy position, was required to submit to a pre-employment psychological evaluation. There is no evidence in this case that Kroll was required to submit to a psychological examination. Instead, as set forth in this

17

Court's August 19th Opinion, WLAA merely required her to attend counseling."
(Memorandum Order, R. 61, p. 2).

The district court was wrong in its attempt to distinguish the facts of the *Barnes*
case from the facts in this case. There is no material difference between the two
cases. Both involved employers who required, as a condition of employment or
continued employment, that employees meet with a psychologist. In the *Barnes* case,
the employee involved did meet with the psychologist and, because of the meeting,
more facts were known about the nature the meeting. The report generated by the
psychologist in the *Barnes* case showed that Mr. Barnes was asked questions that
"covered a wide range of incidents in plaintiff's life" and probed areas tending to
disclose specific psychological disabilities, such as Post Traumatic Stress Disorder."
*Barnes*, 944 F. Supp. at 904. For the reasons outlined in the next section of this brief,
a reasonable inference should have been drawn that plaintiff's compelled treatment
would have likewise included a clinical evaluation.

Other courts have agreed with *Barnes* that compelled psychological treatment
constitutes or includes a "medical examination." *See, Borgus v. Smithkline Beecham
Corp.*, No. 02-CV-6472, 2004 WL 2095534, *5 (W.D.N.Y. 2004), where the court
denied the defendant's summary judgment motion because the court was "unable to

18

find the treatment agreement . . . was no more intrusive than necessary under the circumstances."

In fact, the cases cited in the court's opinion favor the plaintiff's position. The court relied upon *Jaques v. Herbert*, 447 F. Supp. 2d 858 (N.D. Ohio 2006), to support its conclusion that a treatment program does not amount to a medical examination. (Opinion, R. 57, p. 8). But the *Jaques* case did not address psychological treatment. At issue in *Jaques* was a stipulation in a last-chance agreement that plaintiff attend a drug-treatment program. The court found that, "[T]here is simply no evidence that the treatment program involved the assessment of plaintiff's medical condition or the reporting of that condition back to the company." (Memorandum Order, R. 61, p. 3). The *Jaques* case is easily distinguishable because there was no psychological examination or treatment that was a component of the drug treatment program and no report to the company about the results of the treatment. In fact, in a case cited by the court, *Law v. Garden State Tanning*, 159 F. Supp. 2d 787 (E.D. Pa. 2001), the court assumed that a drug treatment program that was coupled with a psychiatric examination was a "medical examination" under the ADA.

The *Jaques* case is also distinguishable because the agreement in that case was negotiated with the employee's union and the plaintiff voluntarily met with the

19

counselor for the employee assistance plan. Voluntary EAP plans are specifically exempted from the medical examination restrictions of the ADA. *See*, EEOC Enforcement Guidance, ¶ 20. The Enforcement Guidance states that, "[A]n EAP counselor may ask employees about their medical condition(s) if s/he: (1) does not act for or on behalf of the employer; (2) is obligated to shield any information the employee reveals from decision makers; and (3) has no power to affect employment decisions." *Id.* In this case, Emily Kroll was not a voluntary participant in an EAP program and she was required to sign an authorization to release her medical records to WLAA. (Plaintiff's brief, R. 51, Exhibit 11, Dresen dep, p. 39, ln. 23 - p. 40, ln. 22-24). For all of the foregoing reasons, the *Jaques* case does not support the court's conclusion that a treatment program is not a "medical examination." The cases show that a treatment program can include a medical examination and treatment. It was reasonable to infer that the treatment program compelled by the WLAA would have included a "medical examination" of Ms. Kroll.

> **2.    A Reasonable Inference from the Evidence Presented Is that a Clinical Evaluation Would Have Been Performed as Part of the Psychologist's Treatment Program.**

As noted in the court's Opinion, under Fed. R. Civ. P. 56, all inferences from the evidence must be drawn in a light most favorable to the non-moving party. (Opinion, R. 57, p. 5) (citing *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233,

20

236 (6th Cir. 1992)). In this case, the court inferred from the evidence that the counseling mandated by WLAA would not have involved any clinical evaluation or psychological examination of Ms. Kroll. There was, however, no evidence presented by defendant to justify the court's inference that mandated counseling would not have included a clinical evaluation of Ms. Kroll.

A reasonable inference would have been that, in order to provide the mandated treatment, the psychologist selected by WLAA would have conducted a clinical evaluation. In fact, it would have been reasonable to infer that the psychologist may have asked questions similar to those that Dr. Stock put to the plaintiff in the Barnes case, including a "wide range of incidents in plaintiff's life" and "probed areas tending to disclose specific psychological disabilities." *Barnes v. Cochran*, 944 F. Supp. 897, 904 (S.D. Fla. 1996).

In the *Barnes* case, the psychologist performed the Minnesota Multi-phasic Personality Inventory Test (MMPI) and other tests. The expert retained by WLAA in this case, Joseph J. Auffrey, Ph.D., similarly performed the MMPI, the Rorschach Inkblot Test, a clinical examination, and psychometric testing when he evaluated Ms. Kroll. (Defendant's brief, R. 50, Exhibit P). The court's Opinion states it was rejecting "Kroll's suggestion that WLAA compelled her to undergo a medical test when it required her to submit to a psychological examination in connection with this

21

lawsuit." (Opinion, R. 57, p. 8, n 3). But Ms. Kroll does not take the position that the defense medical examination conducted by Dr. Auffrey was prohibited by the ADA. Rather, the testing conducted by Dr. Auffrey supports Ms. Kroll's assertion that WLAA was expecting that a psychologist would both test and treat Mr. Kroll as a condition of her continued employment.

Throughout defendant's reply brief, WLAA stated that Brian Binns determined that plaintiff needed "psychological treatment and therapy." (Defendant's reply brief, R. 55, p. 2, 5, and 8). The inference sought by the plaintiff, that a psychologist would have been required to conduct a clinical examination before administering treatment and therapy, was reasonable. In fact, the failure to assess Mr. Kroll's need for treatment and therapy before administering therapy would likely have been malpractice.

In its Memorandum Order, the court states that plaintiff's position that treatment would have necessitated testing "requires an assumption that mental health counseling always includes testing or evaluation." (Memorandum Order, R. 61, p. 3). But the court offers no support for the inference it drew that "psychological treatment and therapy" may take place without testing.

The court also states it was Ms. Kroll's burden to present evidence as to what would have taken place during or as part of the treatment and therapy sessions.

22

(Memorandum Order, R. 61, p. 3, n 1).    The court's opinion shows that it was drawing inferences from the evidence in favor of the moving party and requiring Ms. Kroll to offer proof on issues that were never raised by WLAA.

The record also supports plaintiff's contention that defendant WLAA expected the psychologist to investigate whether Emily Kroll was a person with a disability. For example, Brian Binns requested that Emily Kroll see a psychologist to discuss issues related to her mental health. (Plaintiff's brief, R. 51, Exhibit 1, Binns dep, p. 60, ln. 12-15).  During the meeting where Emily Kroll was terminated, Brian Binns told Ms. Kroll that if she did not complete counseling she could no longer work for WLAA, and that she was required to see Binns when she completed the mandated counseling. (Plaintiff's brief, R. 51, Exhibit 2, Holmstrom dep, p. 10, ln. 23-25, p. 11, ln. 1-5). This testimony certainly permits the reasonable inference that Binns was looking to the psychologist and Ms. Kroll to confirm that the treatment had succeeded and that plaintiff was well enough to return to work.  Such treatment would have necessitated a clinical evaluation of the plaintiff.

The trial court's Opinion states: "In this case, nothing in the record suggests that the counseling WLAA required Kroll to attend would have involved or required psychological testing." (Opinion, R. 57, p. 8).  However, there was nothing in the record to indicate that the counseling compelled by WLAA would not have required

23

psychological testing. The only way for the record to have been clear on this point was if Ms. Kroll would have agreed to participate in the prohibited treatment. But the law does not require a plaintiff to engage in a prohibited act simply to prove what would have likely taken place.

The court's Memorandum Order refers to Ms. Kroll's statement that a reasonable inference could be drawn that the counseling at issue would have required at least some psychological testing as "pure speculation." (Memorandum Order, R. 61, p. 3). But Ms. Kroll offered at least three pieces of evidence to support this inference. First, she was required to sign an authorization to release her medical records from the treatment to WLAA. WLAA's demand for plaintiff's treatment records permits the inference that WLAA was looking for more than just treatment and that it expected the psychologist to give WLAA his opinion on whether Ms. Kroll was a person  psychologically able to return to work.

The court also concluded, from Jean Dresen's self-serving testimony, that the release of Ms. Kroll's medical records was sought "only to confirm that [Kroll] was attending the weekly meetings."    (Opinion, R. 57, p. 8, n 3).  But Ms. Kroll's complete medical records would not have been necessary to evaluate her attendance at the sessions.  And Jean Dresen's statement about the purpose for requesting the records also appears contrary to Brian Binns's testimony that Ms. Kroll would be

24

required to meet with him after she completed the mandated counseling and before she was permitted to return to work. (Plaintiff's brief, R. 51, Exhibit 13, Holmstrom dep, p. 10, ln. 23 - p. 11, ln. 5). If defendant was only interested in confirming that Ms. Kroll attended the counseling sessions, why was a meeting with Mr. Binns a prerequisite to her return to work?

There was a basis for the fact finder to reject defendant's explanation for why Ms. Kroll's medical records were being sought. And the court, in resolving a summary judgment motion, "must disregard all evidence favorable to the moving party that the jury is not required to believe." *See*, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000). To do otherwise would supplant the jury's constitutionally mandated role. *Id.* In this case, the court relied exclusively upon the testimony of the moving party's witness, Jean Dresen, to support its conclusion as to the defendant's motive or reason for requesting the records at issue. This was improper.

Defendant's request for plaintiff to sign an authorization to release medical records also independently violates another provision of the EEOC Enforcement Guidance. Even when an employee requests a reasonable accommodation, the "employer cannot ask for employee's complete medical records because they are

likely to contain information unrelated to the disability at issue and the need for accommodation." EEOC Enforcement Guidance, ¶10.

Other courts have found requests for psychological records to be a factor supporting a violation of the medical examination provisions of the ADA. *See*, *Jackson v. Lake County*, No. 01-C-6528, 2003 WL 22127743 (N.D. Ill. 2003); *See also*, *Scott v. Napolitano*, 717 F. Supp. 2d 1071 (S.D. Cal. 2010) (medical questionnaire submitted to employee asking about prior treatment for mental conditions and medications found to violate the ADA medical examination provisions).

In short, defendant's demand for plaintiff's therapy records, its insistence upon a post-treatment meeting with the plaintiff, and its reservation of the right to deny the plaintiff's request to return to work after the therapy was completed shows that it was reasonable to infer that the treatment would have included a medical examination. At the very least, summary dismissal of this case without information about what may have taken place at the counseling sessions was premature.

## IV.

## <u>CONCLUSION AND RELIEF SOUGHT</u>

For the foregoing reasons, Emily Kroll respectfully requests this court to reverse the district's court's decision granting the defendant's summary judgment motion and to remand this case to the district court for a trial on the merits.

BOS & GLAZIER, P.L.C.
Attorneys for Appellant

Date: December 1, 2010          By:    */s/ Bradley K. Glazier*
                                       Bradley K. Glazier (P35523)
                                       990 Monroe Avenue, N.W.
                                       Grand Rapids, MI  49503
                                       (616) 458-6814

## CERTIFICATE OF COMPLIANCE

Pursuant to the 6th Cir. R. 32(a)(7)(C), the undersigned certifies this Brief complies with the type-volume limitations of 6th Cir. R. 32(a)(7)(B).

1.    Exclusive of the exempted portions in 6th Cir. R. 32 (A)(7)(B)(iii), the Brief contains 5,760 words.

2.    The Brief has been prepared in proportionately spaced typeface using: Times New Roman 14.

3.    The undersigned understands a material misrepresentation in completing this Certificate, or circumvention of the  type-volume limits in 6th Cir. R. 32(a)(7), may result in the Court's striking the Brief and imposing sanctions against the person signing the Brief.


Dated: December 1, 2010.              _/s/ Bradley K. Glazier_____
                                       Bradley K. Glazier
                                       Attorney for Appellant

## **PROOF OF SERVICE**

I hereby certify that on December 1, 2010, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.


Date: December 1, 2010            By:___*/s/ Bradley K. Glazier*_____
                                              Bradley K. Glazier (P35523)
                                              BOS & GLAZIER, P.L.C.
                                              990 Monroe Avenue, N.W.
                                              Grand Rapids, MI 49503
                                              Telephone: (616) 458-6814
                                              Facsimile: (616) 459-8614
                                              bglazier@bosglazier.com
                                              *Attorney for Plaintiff-Appellant*


.115372