# Bos & Glazier
**Trial Attorneys**

CAROLE D. BOS
BRADLEY K. GLAZIER

*Of Counsel:*
GWEN E. BUDAY
TIMOTHY L. TAYLOR

March 1, 2011

990 MONROE AVE., N.W.
GRAND RAPIDS, MI 49503-1423
616-458-6814
616-459-8614 (Fax)
www.bosglazier.com

Leonard Green, Clerk
Office of the Clerk
U.S. Court of Appeals - Sixth Circuit
540 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, OH 45202

      In re:  Emily Kroll v White Lake Ambulance Authority
              COA Case No.: 10-2348
              **SUPPLEMENTAL AUTHORITY**
              Our File No.: 440511

Dear Mr. Green:

      This letter is to advise the court, pursuant to Fed. R. App. P. 28 (j), of supplemental authority that has come to appellant counsel's attention since the briefs were filed in this case. On February 23, 2011, this Court issued its reported decision in *Lee v. City of Columbus, Ohio*, ___ F.3d ___, No. 09-3899, 2011 WL 611904 (6th Cir. Feb. 23, 2011). A copy of the decision is enclosed with this letter. In *Lee*, the court addressed two issues that are pertinent to this appeal.

      First, the court determined that, "A plaintiff need not prove that he or she has a disability in order to contest an allegedly improper inquiry under 42 U.S.C. §12112(d)." (Slip op. *5). This issue was addressed in plaintiff's reply brief on page 3, n. 2. At the time appellant filed her reply brief, this issue was unresolved in the 6th Circuit Court of Appeals.

      Second, the court found an Equal Employment Opportunity Commission publication, *Questions and Answers: Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act* (ADA), (EEOC, July 26, 2000, 2000 WL 33407, to be "very persuasive authority." (citation omitted) (Slip op. * 9). The Enforcement Guidance previously referenced is referred to throughout plaintiff's main brief and her reply brief.



**Bos & Glazier**
*Trial Attorneys*

Please bring this decision to the court's attention and please contact me with any questions. Thank you.

Very truly yours,

BOS & GLAZIER, P.L.C.

Bradley K. Glazier

BKG:swr.115791
Enclosure
cc:   Michael S. Bogren, Esq.
      Douglas M. Hughes, Esq.

Westlaw.

Page 1

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
**(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))**

Only the Westlaw citation is currently available.

United States Court of Appeals,
Sixth Circuit.
Lisa LEE, Individually and as class Representatives on behalf of those similarly situated; Paula Lee, Individually and as class Representatives on behalf of those similarly situated; Teresa Ruby, Individually and as class Representatives on behalf of those similarly situated; Cheri Bowman, Individually and as class Representatives on behalf of those similarly situated; Carrie Best, Individually and as class Representatives on behalf of those similarly situated; Veronica Conley, Plaintiffs-Appellees,
v.
The CITY OF **COLUMBUS**, OHIO, Defendant-Appellant,
Mitchell **Brown**, City of **Columbus**, Director of Public Safety, et al., Defendants.

No. 09-3899.
Argued: April 28, 2010.
Decided and Filed: Feb. 23, 2011.

**Background:** Employees brought putative class action against city, alleging violations of the Rehabilitation Act, as well as constitutional claims pursuant to § 1983. The United States District Court for the Southern District of Ohio, Gregory L. Frost, J., 644 F.Supp.2d 1000, granted summary judgment in favor of employees and entered a permanent injunction prohibiting city from enforcing its sick leave procedures. City appealed.

**Holdings:** The Court of Appeals, Griffin, Circuit Judge, held that:
(1) city directive comported with Rehabilitation Act, and
(2) directive did not raise an informational privacy concern.

Reversed and remanded.

West Headnotes

**[1] Injunction 212 €==0**

212 Injunction
  A party is entitled to a permanent injunction if it can establish that it suffered a constitutional violation and will suffer continuing irreparable injury for which there is no adequate remedy at law.

**[2] Injunction 212 €==0**

212 Injunction
  In determining whether a district court has properly granted a permanent injunction, appellate courts review factual findings for clear error, legal conclusions de novo, and the scope of injunctive relief for abuse of discretion.

**[3] Civil Rights 78 €==0**

78 Civil Rights
  To recover on a claim of disability-based discrimination under the Rehabilitation Act, an employee must establish that: (1) he is an individual with a disability; (2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (3) he suffered an adverse employment action solely by reason of his handicap. Rehabilitation Act of 1973, § 504(a), 29 U.S.C.A. § 794(a).

**[4] Civil Rights 78 €==0**

78 Civil Rights
  A plaintiff need not prove that he or she has a disability in order to contest an allegedly improper medical inquiry under the Americans with Disabilities Act (ADA). Americans with Disabilities Act of 1990, § 102(d), 42 U.S.C.A. § 12112(d).

**[5] Civil Rights 78 €==0**

78 Civil Rights
  The mere fact that an employer, pursuant to a sick leave policy, requests a general diagnosis that may tend to lead to information about disabilities

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
**(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))**

falls far short of the requisite proof in Rehabilitation Act proceedings that the employer is discriminating solely on the basis of disability. Rehabilitation Act of 1973, § 504(a), 29 U.S.C.A. § 794(a).

**[6] Civil Rights 78 ☞0**

78 Civil Rights
City directive that required all employees who used sick leave for personal illness of more than three days or a family illness of more than two days, as well as those employees who were on a sick leave verification list, to provide note to their immediate supervisor from doctor stating the nature of their illness comported with Rehabilitation Act and did not violate proscriptions pertaining to disability related inquiries; directive was universal sick leave policy for all employees, disabled or not. Rehabilitation Act of 1973, § 504(a), 29 U.S.C.A. § 794(a); Americans with Disabilities Act of 1990, § 102(d)(4)(A), 42 U.S.C.A. § 12112(d)(4)(A).

**[7] Civil Rights 78 ☞0**

78 Civil Rights
City directive that required employees returning from sick leave to provide note to their immediate supervisor from doctor stating the nature of their illness did not raise an informational privacy concern, as required for employees' putative § 1983 class action, alleging violations of the First, Fifth and Fourteenth Amendments. U.S.C.A. Const.Amend. 1, 5, 14; 42 U.S.C.A. § 1983.

Appeal from the United States District Court for the Southern District of Ohio at Columbus. No. 07-01230-Gregory L. Frost, District Judge.**ARGUED:**Paula J. Lloyd, City Attorney's Office, Columbus, Ohio, for Appellant. John Spenceley Marshall, Marshall & Morrow, Columbus, Ohio, for Appellees. **ON BRIEF:**Paula J. Lloyd, Pamela J. Gordon, City Attorney's Office, Columbus, Ohio, for Appellant. Michael G. Moore, Law Offices of Michael Moore, Columbus, Ohio, Vivian B. Fisher, Chorpenning, Good & Pandora Co., LPA, Columbus, Ohio, for Appellees. Daniel B. Kohrman, AARP Foundation Litigation, Washington, D.C., for Amicus Curiae.

Before SUHRHEINRICH, McKEAGUE, and GRIFFIN, Circuit Judges.

**OPINION**
GRIFFIN, Circuit Judge.
*1 In this class action suit, defendant City of Columbus, Ohio ("the City"), appeals the district court's order granting in part and denying in part plaintiffs' motion for partial summary judgment, denying defendant's summary judgment motion, and granting plaintiffs' request for permanent injunctive relief. The plaintiffs consist of two certified classes, all of whom are current or former employees of the City of Columbus, Division of Police. Plaintiffs initiated the present action in December 2007 alleging that, as employees, they were subject to certain impermissible city Division Directives that mandate the procedures governing their return to regular duty following sick leave, injury leave, or restricted duty.

At issue in the present appeal is Directive 3.07 § III(H)(1)(c) ("the Directive"), which requires returning employees to submit a copy of their physician's note, stating the "nature of the illness" and whether the employee is capable of returning to regular duty, "to your immediate supervisor." Upset by the mandatory disclosure and funneling of confidential medical information through immediate supervisors, plaintiffs asserted class claims, alleging that the Directive violates the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, and the privacy provisions of the First, Fifth, and Fourteenth Amendments of the United States Constitution through 42 U.S.C. § 1983.[FN1] The district court granted summary judgment in favor of plaintiffs on both claims and entered a permanent injunction prohibiting the City from enforcing Directive 3.07 § III(H)(1)(c). For the reasons that follow, we vacate the injunction and reverse and remand for the entry of judg-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))

Page 3

ment in the City's favor.

I.

The facts of this case are accurately set forth in the district court's decision:

This case was brought by several employees of the City of Columbus, Division of Police. Plaintiffs allege that Columbus Police Division Directive ("Directive") 3.07 § III(H)(1)(c) violates the Rehabilitation Act of 1973, 29 U.S.C. § 790 *et seq.* ("Rehabilitation Act") and the privacy provisions of the First, Fifth and Fourteen Amendments to the Constitution of the United States through 42 U.S.C. § 1983 (" Section 1983 "). Plaintiffs request a permanent injunction prohibiting enforcement of Directive 3.07 § III(1)(c) and Plaintiffs request damages for alleged harm caused to them by the enforcement of that Directive [ ].

Directive 3.07 § III(H) relates to the procedures for when an employee seeks to take sick leave prior to the start of his or her shift and provides in relevant part:

H. Returning to Regular Duty Following Sick Leave, Injury Leave, or Restricted Duty

1. *All* Personnel

a. Notify the Information Desk *to mark up prior to* returning to *regular* duty.

b. If any of the following conditions apply, forward a note from the attending physician to [the Employee Benefits Unit] upon returning to *regular* duty:

*2 (1) More than three days of sick leave were used.

The physician's note must state the nature of the illness and that you are capable of returning to *regular duty.*

(2) Previously notified by a commander to do so.

The physician's note must state the nature of the illness and that you are capable of returning to *regular duty.*

(3) More than two days of sick leave were used due to illness in the immediate family.

The physician's note must state the nature of the family member's illness and that you were required to care for the family member.

Note: Consult the applicable work agreement for the definition of immediate family.

(4) You were assigned to restricted duty.

The physician's note must state that you are capable of returning to regular duty.

c. Submit a copy of the physician's note *to your immediate supervisor.*

Under these provisions, an employee who is returning to regular duty must under specified circumstances provide a note from his or her attending physician to his or her immediate supervisor. The physician's note must state the nature of the illness and that the employee is capable of returning to regular duty if the employee was off for more than three days of sick leave or was previously notified by a commander to do so. Directive 3.07 § III(H)(1)(b)(1), (2). If more than two days of sick leave were used due to illness in the immediate family, then the physician's note must state the nature of the family member's illness and that the employee was required to care for the family member. Directive 3.07 § III(h)(1)(b)(3). In all instances, the Directive requires the employee to submit a copy of the physician's note to his or her immediate supervisor. Directive 3.07 § III(H)(1)(c).

Two of the individually named Plaintiffs, Carrie Best and Cheri Bowman, moved this Court for preliminary injunctive relief against enforcement of Directive 3.07(H)(1)(c) against them. That motion was fully briefed and on June 24, 2008, this

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
**(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))**

Court granted these two Plaintiffs' motion and issued a preliminary injunction, holding that Best and Bowman were substantially likely to succeed on the merits of their Rehabilitation Act claim and their constitutional challenges to Directive 3.07(h)(1)(c).

On May 21, 2008, Plaintiffs filed a motion to certify two plaintiff classes. That motion was fully briefed and on August 22, 2008, this Court granted class certification. Defendants subsequently filed a motion to modify the definition of one of the classes, which this Court granted. The classes are defined as follows:

CLASS I
All employees of the City of Columbus, Division of Police, subject to the enforcement of Division Directive 3.07, who, since December 4, 2005 through present, pursuant to the Directive, have been required to disclose confidential medical information to supervisory personnel.

CLASS II
All current employees of the City of Columbus, Division of Police, subject to the enforcement of Division Directive 3.07.

*3 On September 9, 2008, Plaintiffs filed a motion requesting that the preliminary injunction prohibiting enforcement of Directive 3.07 § III(H)(1)(c) against [two individual plaintiffs] be extended to the Plaintiff Classes. This Court granted that motion on October 8, 2008.

(Citations to record and footnote omitted.)

The parties thereafter filed cross-motions for summary judgment on plaintiffs' class claims for injunctive relief under the Rehabilitation Act and § 1983. In addition, the City moved for summary judgment on plaintiffs' claim for compensatory damages. On July 15, 2009, the district court issued an opinion and order granting partial summary judgment in favor of plaintiffs on the Rehabilitation Act and § 1983 claims, denying the City's cross-motion, and permanently enjoining the City from enforcing Directive 3.07 § III(H)(1)(c). [FN2] *See Lee v. City of Columbus, Ohio,* 644 F.Supp.2d 1000 (S.D.Ohio 2009). The City now appeals.[FN3]

II.
[1][2] "A party is entitled to a permanent injunction if it can establish that it suffered a constitutional violation and will suffer continuing irreparable injury for which there is no adequate remedy at law." *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio,* 610 F.3d 340, 349 (6th Cir.2010) (internal quotation marks and citation omitted). "In determining whether a district court has properly granted a permanent injunction, we review factual findings for clear error, legal conclusions de novo, and the scope of injunctive relief for abuse of discretion." *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP,* 423 F.3d 539, 546 (6th Cir.2005).

"Summary judgment is proper when, viewing the facts and drawing all inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law." *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 594 F.3d 476, 482 (6th Cir.2010) (citing Federal Rule of Civil Procedure 56(c)). "The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Ferro Corp. v. Cookson Group, PLC,* 585 F.3d 946, 949 (6th Cir.2009).

III.
The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, *solely by reason of her or his disability,* ... be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a) (emphasis added). The Rehabilitation Act specifies that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under ... the Americans with Disabilit-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
**(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))**

ies Act of 1990 ["ADA"] (42 U.S.C. § 12111 *et seq.*)...." 29 U.S.C. § 794(d); *see also Doe v. Salvation Army in the U.S.*, 531 F.3d 355, 357 (6th Cir.2008) ("We review claims brought under the Rehabilitation Act as we would claims brought under the [ADA]."); *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir.1997) (en banc) (explaining the similarities in purpose and scope of the two statutes such that "[t]he analysis of claims under the [ADA] roughly parallels those brought under the Rehabilitation Act") (citation and internal quotation marks omitted). The ADA and the Rehabilitation Act both prohibit discrimination against the disabled-but the Rehabilitation Act, unlike the ADA, expressly prohibits discrimination *solely* on the basis of disability.[FN4] *See Burns v. City of Columbus, Dep't of Pub. Safety*, 91 F.3d 836, 841-42 (6th Cir.1996) ("[T]he Rehabilitation Act permits an employer to make a decision *because of* a handicap if the handicap is not the sole reason for the decision.").

**\*4** [3] Thus, to recover on a claim of disability-based discrimination under the Rehabilitation Act, an employee must establish that: "1) he is an individual with a disability; 2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and 3) he [suffered an adverse employment action] solely by reason of his handicap." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir.2007) (citation and internal quotation marks omitted).

Citing *McPherson*, the district court in the case at hand held that the Rehabilitation Act incorporates the limitations on the disclosure of medical information contained in the ADA. The ADA provides in relevant part:

A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A). A "disability" is defined by the ADA as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2006); *see also Spees v. James Marine, Inc.*, 617 F.3d 380, 395-96 (6th Cir.2010).[FN5]

Under the category of "Acceptable examinations and inquiries[,]" the ADA permits an employer to "make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B).[FN6] Any information obtained regarding the medical condition or history of an employee must be "collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that-... supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations[.]" 42 U.S.C. § 12112(d)(3)(B)(i); *see also* 42 U.S.C. § 12112(d)(4)(C).

The district court found that the Rehabilitation Act encompasses these ADA provisions because "the limited disclosure protection [provided by these ADA provisions] furthers the anti-discrimination thrust of both statutory schemes. The restriction on broad disclosure is a protection against undue discrimination of sensitive information that could lead to discrimination." *Lee*, 644 F.Supp.2d at 1009. Following the lead of the Second Circuit Court of Appeals in *Conroy v. New York State Dep't of Correctional Services*, 333 F.3d 88 (2d Cir.2003), the district court held that the City's medical inquiries conducted pursuant to the Directive invoked the ADA's protections:

The fact that the Directive itself requires "a general diagnoses is sufficient to trigger the protections of the ADA under this provision [42 U.S.C. § 12112(d) ]." *Conroy*, 333 F.3d at 95 (affirming the district court's grant of summary judgment to plaintiff on this point). *See also Pennsylvania State Troopers Ass'n v. Miller*, 621 F.Supp.2d

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))

246 (M.D.Pa.2008) (holding that universal policy requiring employee to provide information on "the nature of the inquiry or illness" was an impermissible disability-related inquiry); *Transp. Workers Union, Local 100 v. N .Y. City Transit Auth.*, 341 F.Supp.2d 432 (S.D.N.Y.2004) (same). [The City's] argument that it is not in control of the extent or accuracy of the diagnoses the treating physician chooses to impart on the return to work document is irrelevant to the reasoning behind this conclusion. This Court agrees with the *Conroy* court's conclusion "that since general diagnoses may expose individuals with disabilities to employer stereotypes, the Policy implicates the concerns expressed in these provisions of the ADA" and, by incorporation the Rehabilitation Act. *Conroy*, 333 F.3d at 95-96.

**\*5** *Id.* at 1012.

The district court determined that the Directive's requirement that the confidential medical information be disclosed to immediate supervisors violates § 12112(d)(4)(A), because supervisory personnel in the chain of command are not authorized by the statute to have unfettered access to confidential medical information:

> The ADA and its implementing rules explicitly provide for disclosure of such medical information to a supervisor only in select circumstances, and by so expressly limiting disclosure, the statutory scheme implicitly forecloses disclosure to supervisors for purposes that fall outside those narrow and specific purposes. If the ADA were intended to allow full disclosure to a supervisor in all instances, then there would be no need for the specific disclosure to a supervisor language. *See, e.g.,* 42 U.S.C. § 12112(d)(3)(B)(i). The city's view would mean that the explicit exception for supervisors was mere surplusage, but there is no basis to reach the conclusion that Congress did not intend for the specific language concerning supervisors to constitute a substantive provision.

*Id.* at 1010 (citation and quotation marks omitted). The district court held that the Directive was overly intrusive and improperly provided supervisors with confidential medical information even when they had no reason to possess such knowledge, particularly in light of the fact that the City had a human resources department which presumably could be used to create a "confidentiality barrier between these personnel, whose jobs consist of handling medical information, and supervisors." *Id.* (citation and internal quotation marks omitted). Finding that the City otherwise failed to make out the affirmative defense of business necessity, the court granted summary judgment and permanent injunctive relief to plaintiffs on their Rehabilitation Act claim. *Id.* at 1013-15.

As a preliminary matter, we note that the Rehabilitation Act addresses the confidentiality of medical records only in the limited context of pre-employment examinations. *See* 28 C.F.R. § 42.513; 24 C.F.R. § 8.13(a). However, we agree with the district court and other courts that the ADA's limitations on the disclosure of medical information set forth in 42 U.S.C. § 12112(d) are incorporated by reference into the Rehabilitation Act. *See Doe v. U.S. Postal Service,* 317 F.3d 339, 340 (D.C.Cir.2003); *Scott v. Napolitano,* 717 F.Supp.2d 1071, 1082 n. 4 (S.D.Cal.2010); *Brady v. Potter,* No. Civ. 02-1121, 2004 WL 964264, at \*4 (D. Minn. April 30, 2004) (unpublished); *Greer v. O'Neill,* No. 01-1398, 2003 WL 25653036, at \*9 (D.D.C. Sept.25, 2003) (unpublished). Plaintiffs must therefore show that the Directive's mandate amounted to a prohibited inquiry into their medical disability within the meaning of the ADA, 42 U.S.C. § 12112(d)(4)(A).

[4] Moreover, the district court appropriately determined that plaintiffs are proper parties to challenge the Directive. *See Lee,* 644 F.Supp.2d at 1011 . A plaintiff need not prove that he or she has a disability in order to contest an allegedly improper medical inquiry under 42 U.S.C. § 12112(d). *See Harrison v. Benchmark Elecs. Huntsville, Inc.,* 593

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
**(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))**

F.3d 1206, 1214 (11th Cir.2010) ("[A] plaintiff has a private right of action under [ § 12112(d) ], irrespective of his disability status."); *Thomas v. Corwin,* 483 F.3d 516, 527 (8th Cir.2007) (Section 12112(d)(4)(A) "applies to all employees, regardless of whether the employee has an actual disability."); *Conroy,* 333 F.3d at 94 (and cases cited therein) ("[A] plaintiff need not prove that he or she has a disability unknown to his or her employer in order to challenge a medical inquiry or examination under 42 U.S.C. § 12112(d)(4)(a)."); *Roe v. Cheyenne Mountain Conf. Resort, Inc.,* 124 F.3d 1221, 1229 (10th Cir.1997) ( "It makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability.") (citation and internal quotation marks omitted).

*\*6* However, beyond this point, we part ways with the district court's analysis, which follows the Second Circuit's holding in *Conroy* that because an employer's general request for a "diagnosis" upon an employee's return from sick leave " *may tend to reveal* " a disability, it therefore constitutes a protected disability-related inquiry under § 12112(d)(4)(A) of the ADA. *Conroy,* 333 F.3d at 95. Because we find *Conroy* to be distinguishable, the district court's reliance on this authority is misplaced.

At issue in *Conroy* was an ADA challenge, under § 12112(d)(4)(A), to a correctional-facility sick-leave policy, similar to the Directive in the present case, that required employees to submit general diagnoses as part of a medical certification procedure following certain absences. *Id.* at 92. The certification included a brief diagnosis that was "sufficiently informative as to allow [the defendant facility] to make a determination concerning the employee's entitlement to leave or to evaluate the need to have an employee examined by [the Employee Health Service] prior to returning to duty." *Id.* (citation and internal quotation marks omitted; second alteration in original). Although certification was not usually required for absences of less than four days, the policy indicated that in "exceptional circumstances, a supervisor may exercise the right to request certification for any absence charged to sick leave or family sick leave regardless of duration." *Id.* (citation and internal quotation marks omitted). A second related directive stated that "[m]edical certification may be required of any employee who requests to charge an absence to sick leave credits[,]" but clarified that only "[e]mployees suspected of attendance abuse may be required to furnish medical certification for all absences which they seek to charge to sick leave." *Id.* (citation and internal quotation marks omitted; alteration in original). Examining this policy, the Second Circuit held:

> [The defendants] contend[ ] that requiring medical certification is not an "inquiry" prohibited under 42 U.S.C. § 12112(d)(4)(A). The ADA does not forbid all medical inquiries, but only those "as to whether such employee is an individual with a disability or as to the nature or severity of the disability." *Id.* [The defendants] argue[ ] that because the Policy only requires a "general" diagnosis, its inquiries are insufficient to reveal whether the employee has a disability. [The plaintiff] argues that the Policy falls within the statute, because the inquiries would tend to reveal an employee's disability.
>
> \* \* \*
>
> It is clear that even what [defendants] refer[ ] to as a "general diagnosis" may tend to reveal a disability. We hold that requiring a general diagnosis is sufficient to trigger the protections of the ADA under this provision and that summary judgment in [the plaintiff's] favor was appropriate on this element.

*\*7* Few courts have interpreted this provision, but one court has found that a requirement that employees disclose what prescription drugs they use is a prohibited inquiry, since such a policy would reveal disabilities (or perceived disabilities) to employers. *See Roe v. Cheyenne Mountain Conference Resort,* 920 F.Supp. 1153, 1154-55

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
**(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))**

(D.Colo.1996), *aff'd in pertinent part,* 124 F.3d 1221 (10th Cir.1997). Similarly, we believe that since general diagnoses may expose individuals with disabilities to employer stereotypes, the Policy implicates the concerns expressed in these provisions of the ADA.

*Id.* at 95-96. The *Conroy* court found support for its conclusion in the EEOC's guide published for the purpose of clarifying the application of § 12112(d)(4)(A):

The EEOC's own definition of a "disability-related inquiry" further undercuts [the defendants'] argument:

**What is a "disability-related inquiry"? (Question 1)**

A "disability-related inquiry" is a question that is likely to elicit information about a disability, such as asking employees about: whether they have or ever had a disability; the kinds of prescription medications they are taking; and, the results of any genetic tests they have had.

Disability-related inquiries also include asking an employee's co-worker, family member, or doctor about the employee's disability.

Questions that are *not* likely to elicit information about a disability are always permitted, and they include asking employees about their general well-being; whether they can perform job functions; and about their current illegal use of drugs.

*See Questions and Answers: Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA),* (EEOC, July 2[6], 2000) [EEOC Notice 915.002, 2000 WL 33407183, at *1-2].... [The defendants'] requirement of a general diagnosis is much more akin to the examples of prohibited inquiries than to inquiries into general well-being or ability to perform job functions.

*Id.* at 96. The *Conroy* court therefore concluded that the sick-leave policy at issue constituted a prohibited disability-related inquiry under § 12112(d)(4)(A) that must be justified by business necessity.[FN7] *See also Pennsylvania State Troopers Ass'n,* 621 F.Supp.2d at 252 ("A policy that requires the employee to provide a general diagnosis or description of a medical condition constitutes a prohibited inquiry under § 12112(d)(4)."); *Transp. Workers Union of Am., Local 100,* 341 F.Supp.2d at 446 (following *Conroy* and holding that "the general diagnosis requirement [is] an inquiry within the meaning of the ADA prohibition, because it may tend to reveal a disability") (internal quotation marks and citation omitted).

The *Conroy* court's holding in this regard has yet to be followed by any of our sister circuits, and we decline to apply it to the present circumstances. First, we do not find the requirement that an employee provide a general diagnosis-or in this case, an even less specific statement regarding the "nature" of an employee's illness-to be tantamount to an inquiry "as to whether such employee is an individual with a disability or as to the nature or severity of the disability" under § 12112(d)(4)(A). By painting with such a broad brush, and finding suspect any routine or general inquiry simply because it "may tend to reveal" an employee's disability, the *Conroy* court has unnecessarily swept within the statute's prohibition numerous legitimate and innocuous inquiries that are not aimed at identifying a disability. Obviously, asking an employee whether he is taking prescription drugs or medication, *see Doe,* 531 F.3d at 358-59, or questions "seek[ing] information about illnesses, mental conditions, or other impairments [an employee] has or had in the past[,]" trigger the ADA's (and hence the Rehabilitation Act's) protections. *Scott,* 717 F.Supp.2d at 1084-85. Asking an employee returning to work to describe the "nature" of his illness, however, is not necessarily a question about whether the employee is disabled.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))

**\*8** [5] This is particularly problematic in the present context, which involves a claim brought under the Rehabilitation Act, not the ADA. The mere fact that an employer, pursuant to a sick leave policy, requests a general diagnosis that *may tend to lead* to information about disabilities falls far short of the requisite proof that the employer is discriminating *solely* on the basis of disability. *See, e.g., Verkade v. U.S. Postal* Service, 378 F. App'x 567, 578 (6th Cir.2010) (unpublished) ("An employer makes an adverse employment decision 'solely' because of its employee's disability when the employer has no reason left to rely on to justify its decision *other* than the employee's disability.") (citation and internal quotation marks omitted); *Turner v. City of Englewood,* 195 F. App'x 346, 354 (6th Cir.2006) (unpublished) ( "Plaintiff cannot make out a prima facie case of discrimination under the Rehabilitation Act because she cannot prove that discrimination was the *sole motivation* for Defendant's rezoning of her property.") (emphasis added).

In *Conroy,* the Second Circuit was interpreting the ADA, which does not contain language requiring that plaintiffs demonstrate that they have been discriminated against "solely by reason" of a disability. The Second Circuit therefore, appropriately, did not factor that requirement into its decision. The Rehabilitation Act, in contrast, requires that plaintiffs make exactly that showing. Consequently, the analysis in the present circumstances should focus on whether a medical inquiry is intended to reveal or necessitates revealing a disability, rather than whether the inquiry may merely *tend to* reveal a disability. *Cf.* 24 C.F.R. § 8.13(a) (Rehabilitation Act regulation providing that "a recipient may not make a preemployment inquiry or conduct a preemployment medical examination of an applicant *to determine* whether the applicant is an individual with handicaps or the nature or severity of a handicap.") (emphasis added).

Here, the generalized and uniform inquiry mandated by the City's Directive-requiring that employees returning from more than three days of sick leave submit a note to their immediate supervisor from their doctor stating the "nature of the illness"-is not ipso facto a prohibited inquiry "as to whether [an] employee is an individual with a disability," as "disability" is defined by the ADA. There is no evidence that this inquiry is intended to reveal or necessitates revealing a disability. Thus, we conclude that the Directive does not trigger the protections of § 12112(d)(4)(A).

Even assuming arguendo that the requirement of the Directive can be characterized as a disability-related inquiry, it is not prohibited by the ADA because it is a workplace policy applicable to all employees, disabled or not. As the EEOC Enforcement Guidance cited by the *Conroy* court further explains:

**May an employer request that an employee provide a doctor's note or other explanation when the employee has used sick leave? (Question 15)**

**\*9** Yes. An employer is entitled to know why an employee is requesting sick leave. An employer, therefore, may ask an employee to provide a doctor's note or other explanation, as long as it has a policy or practice of requiring all employees to do so.

*Questions and Answers: Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act (ADA),* 2000 WL 33407183, at \*4.

The Enforcement Guidance, while non-binding, "constitute[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *White v. Burlington N. & Santa Fe Ry. Co.,* 364 F.3d 789, 812 (6th Cir.2004) (en banc) (citations and internal quotation marks omitted); *see also E.E. O.C. v. Sundance Rehabilitation Corp.,* 466 F.3d 490, 500 (6th Cir.2006) ("[The EEOC's] Enforcement Guidance is entitled

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
**(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))**

to respect only to the extent of its persuasive power."). Here, we find it to be very "persuasive authority." *White,* 364 F.3d at 812.

In fact, on the basis of this Guidance, other courts and the EEOC have held that an employer's request for employees to supply information justifying the use of sick leave is not an improper medical inquiry under the Rehabilitation Act or the ADA. In *White v. Potter,* EEOC Dec. 01A14266, 2002 WL 31440931 (Oct. 23, 2002), the EEOC rejected the employee's claim that he was discriminated against on the basis of age, where the employer placed him on leave without pay for failing to provide the required leave documentation, holding:

> While not raised by the parties, we take this opportunity to point out that there is no evidence that the agency's actions constituted an improper medical inquiry under Section 501 of the Rehabilitation Act of 1973.... Commission guidance makes clear that an employer may ask an employee to justify his/her use of sick leave by providing a doctor's note or other explanation, as long as it has a policy or practice requiring all employees, with or without disabilities to do so.

2002 WL 31440931, at *4 n. 2.

Similarly, in *Donoghue v. Nicholson,* EEOC Dec. 0120063441, 2007 WL 2907575 (Sept. 26, 2007), the EEOC rejected the complainant's claim under the Rehabilitation Act that her employer failed to accommodate her disability by retracting previously approved sick leave and denying her leave request, finding that "[e]ven if complainant verbally informed her supervisor that she needed the leave because of a medical test, complainant's supervisor was entitled to request reasonable medical documentation[,]" which was never provided by the complainant. 2007 WL 2907575, at *4 (citing *EEOC Enforcement Guidance on Disability-Related Inquiries,* Notice 915.002, at question 15). *See also* 5 C.F.R. § 630.405 (requiring certain federal employees to provide "administratively acceptable evidence or medical certification" for a sick-leave absence).

In *McGill v. Munoz,* 203 F.3d 843, 847-48 (D.C.Cir.2000), an action brought under the Rehabilitation Act, the court held that evidence that a federal agency discriminated against an employee on the basis of her depression by requiring her to provide a doctor's note for requested sick leave was insufficient for submission to a jury, where the requirement "complied with the written sick leave policy" and there was no evidence that employees with similarly suspicious patterns of absenteeism were treated differently. *See also Ogawa v. Henderson,* 10 F. App'x 587, 588 (9th Cir.2001) (unpublished) (holding that postal carrier, who suffered an on-the-job injury, failed to establish that he was terminated solely on the basis of his disability, as required by the Rehabilitation Act, where "[t]he USPS based its termination ... on his failure to provide medical documentation after each absence, as required by its sick leave policy. Employers may terminate otherwise disabled individuals who violate company rules."); *Luther v. Gutierrez,* 618 F.Supp.2d 483, 493 (E.D.Va.2009) (holding that terminated employee, who failed to follow supervisory instructions, failed to follow sick-leave procedures, and was repeatedly absent without leave, failed to establish a prima facie case of disability discrimination under the Rehabilitation Act: "[T]he Rehabilitation Act does not serve to immunize a disabled employee from discipline in the workplace based on a violation of a valid work rule applied to all employees.") (citing *Pernice v. City of Chicago,* 237 F.3d 783, 785 (7th Cir.2001)); *Montano v. INOVA Health Care Servs.,* No. 1:08cv565, 2008 WL 4905982, at *7 (E.D.Va. Nov.12, 2008) (unpublished) (holding that the employer's inquiry into the reason for the plaintiff's medical leave was not a disability-related inquiry protected by ADA); *Bosse v. Chertoff,* No. CV 07-12-H-CCL, 2008 WL 906019, at *10 (D.Mont. March 21, 2008) (rejecting employee's claim of disability discrimination under the Rehabilitation Act where the employer "tried to work with [the plaintiff] and required only that he followed pre-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 11

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
**(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))**

scribed paperwork and procedures for using sick leave[,]" but the plaintiff "adamantly refused to follow these ... procedures" and "refused to provide the [employer] with the medical certificates substantiating his illnesses"); *Miller v. Donley,* EEOC Dec. 0120082055, 2010 WL 4388416, at *4 (Oct. 26, 2010) (rejecting the complainant's Rehabilitation Act discrimination claim based upon the employer's issuance of a letter of absence because the record showed that the agency legitimately issued the letter "after Complainant had been off for weeks and did not submit the documentation required for extended leave in the form the Agency required[,]" and the agency reversed the denial of sick leave once the complainant "submitted documentation that the agency found adequate").

**\*10** [6] In the present case, the City's Directive is a universal sick-leave policy applicable across the board to all Division employees, disabled or not, who use contractual sick leave for a personal illness of more than three days or a family illness of more than two days, as well as those employees who are on a sick-leave verification list. Consistent with the above authorities, it constitutes a valid and acceptable inquiry under § 12112(d)(4)(A).

In granting plaintiffs' motion for injunctive relief, the district court reluctantly acknowledged the legitimacy of such sick-leave policies, *Lee,* 644 F.Supp.2d at 1009, but nevertheless enjoined enforcement of the Directive, concluding that it is impermissible "to require an employee to give the note or slip containing his or her medical diagnosis to his or her immediate supervisor, when the Division of Police maintains a human resources department." *Id.* at 1010. The court reasoned:

> The only disclosure to a supervisor that is necessary or permissible is that information that targets necessary restrictions or accommodations for an employee [under § 12112(d)(3)(B)(i) and (4)C) ]....
>
> Supervisors, who are not fungible in this case with human resource personnel, are on a need-to-know basis, and the directive at issue improperly provides supervisors with otherwise confidential medical information even when they have no reason to possess such knowledge.

*Id.* at 1013 (citation omitted). The district court stated: "Of course, not every employer will have human resources personnel. The City of Columbus does, however, which creates a distinction and a confidentiality barrier between these personnel, whose jobs consist of handling medical information, and supervisors." *Lee,* 644 F.Supp.2d at 1010 (citation omitted).

The district court has created an artificial distinction where none exists. It is not within the province of the courts to rewrite legislation, superimpose language onto statutes, or "act as super personnel departments to second guess an employer's facially legitimate business decisions." *Adams v. Tenn. Dep't of Fin. and Admin.,* 179 F. App'x 266, 272 (6th Cir.2006) (unpublished) (citation and internal quotation marks omitted). There is no language in either the Rehabilitation Act or the ADA that, with regard to the processing of medical inquiries, differentiates between employers based on the size or organizational structure of the work force or the existence of a separate human resources department. The ADA clearly permits an employer, including by express definition a supervisor (as an "agent" of the employer), to make inquiries and receive medical information in accordance with § 12112(d). *See* 42 U.S.C. §§ 12111(2) and (5)(A). Nothing in § 12112(d) prohibits the City from designating an employee's immediate supervisor as the initial contact for purposes of administering its sick leave benefits.

The confidentiality provisions set forth in § 12112(3)(B)(i), cited by the district court, "protect disabled employees from job discrimination by ensuring that the results of job-related medical examinations would not be kept in their personnel files. The statute goes no further than requiring employers to keep that limited class of medical records confidential[.]" *Yoder v. Ingersoll-Rand Co.,* 31

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))

F.Supp.2d 565, 569 (N.D.Ohio 1997), aff'd, 172 F.3d 51 (6th Cir.1998) (table). Section 12112 (3)(B)(i) neither expressly nor implicitly restricts the role of supervisory personnel in receiving and processing an employee's medical information.

**\*11** Plaintiffs have no basis to challenge the Directive based on unwarranted speculation that supervisors will disobey the statute's confidentiality strictures or the City's Directive. Supervisors are obligated to follow the City's rules and policies, which include an express prohibition against discrimination on the basis of disability and disclosure of confidential medical information. Division policy prohibits supervisors from sharing or disseminating doctors' notes or any confidential information contained therein.

As the City points out, the legitimacy of sick-leave policies that require employees returning from leave to provide medical information to supervisors is demonstrated by the sick-leave policy for employees of the EEOC, which essentially mirrors the Directive. The EEOC's own policy provides that "[t]he approval of sick leave is a responsibility of the supervisor," who "shall determine that ... medical documentation submitted by the employee ... supports charging the absence to sick leave." The EEOC also recognizes that in the context of disability requests, which would likely entail medical information of a more serious nature than a doctor's note furnished for occasional sick leave, that it is appropriate for first-line supervisors to review and approve ADA accommodation requests in the first instance: "To eliminate unnecessary levels of review, agencies should authorize first-line supervisors to approve requests for reasonable accommodation wherever possible." *Policy Guidance on Executive Order 13164: Establishing Procedures To Facilitate The Provision of Reasonable Accommodation,* No. 915.002, 2000 WL 33407185, at \*6 (Oct. 20, 2000) (emphasis omitted).

In sum, we hold that the City's Directive comports with the Rehabilitation Act and does not violate the proscriptions pertaining to disability-related inquiries set forth in § 12112(d)(4)(A) of the ADA, incorporated by reference into the Rehabilitation Act. Because the City's implementation of the Directive does not constitute an adverse employment action, plaintiffs have failed to establish a prima facie case of disability discrimination under the Rehabilitation Act. *See Jones,* 488 F.3d at 404. "Generally, at the summary judgment stage, a plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins Cnty. Sch. Bd. of Educ.,* 484 F.3d 357, 364 (6th Cir.2007) (citation and internal quotation marks omitted). In the present circumstances, plaintiffs have not carried their burden. *See James v. Goodyear Tire & Rubber Co.,* 354 F. App'x 246, 249 (6th Cir.2009) (unpublished) (holding that an employer's valid demand for a medical examination "cannot constitute an adverse employment action in general discrimination claims" under the ADA).

For these reasons, we vacate the injunction and reverse the district court's judgment in favor of plaintiffs on the Rehabilitation Act claim and remand with instructions that the district court enter judgment in favor of the City.

IV.

**\*12** [7] The district court also denied the City's summary judgment motion and granted summary judgment in favor of plaintiffs on their claim brought under 42 U.S.C. § 1983, alleging that implementation of Directive 3.07 § III(H)(1)(c) and the disclosure of their personal medical information to immediate supervisors violates their privacy rights protected by the First, Fifth, and Fourteenth Amendments to the United States Constitution. The court concluded "that Directive 3.07 § III(H)(1)(c) 'encompasses unwarranted intrusion into all areas of an employee's personal medical information without a sufficiently exculpatory animus' and, therefore, violates the privacy provisions found in the United States Constitution." We disagree.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 13

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))

"The Sixth Circuit ... has developed and applied a different approach to assessing informational privacy claims" that "requires that the asserted privacy interest implicate a fundamental right." *Lambert v. Hartman,* 517 F.3d 433, 442 (6th Cir.2008). As we explained in *Lambert:*

> Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in "independence in making certain kinds of important decisions." *Whalen v. Roe,* 429 U.S. 589, 599-600 & n. 26, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education" (quoting *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id.* at 599, 603-04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in non-disclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.,* 433 U.S. 425, 465, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists). Lambert's claim implicates the latter interest, which this court has described as "an individual's right to control the nature and extent of information released about that individual" and that "has been coined an informational right to privacy." *Bloch v. Ribar,* 156 F.3d 673, 683 (6th Cir.1998).
>
> This court, in contrast to some of our sister circuits, "has narrowly construed the holdings of *Whalen* and *Nixon* to extend the right to informational privacy only to interests that implicate a fundamental liberty interest." *Id.* at 684. A plaintiff alleging a violation of her right to informational privacy must therefore demonstrate that "the interest at stake relates to 'those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty.' " *Id.* (quoting *J.P. v. DeSanti,* 653 F.2d 1080, 1090 (6th Cir.1981)). Only after a fundamental right is identified should the court proceed to the next step of the analysis-the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private. *See Kallstrom* [*v. City of Columbus,* 136 F.3d 1055, 1061 (6th Cir.1998) ] ("This circuit ... will only balance an individual's interest in nondisclosure ... against the public's interest in and need for the invasion of privacy where the individual privacy interest is of constitutional dimension.").

*13 *Applying these standards, this court has recognized an informational-privacy interest of constitutional dimension in only two instances:*

*(1) where the release of personal information could lead to bodily harm (Kallstrom), and (2) where the information released was of a sexual, personal, and humiliating nature (Bloch).*

*Lambert,* 517 F.3d at 440 (emphasis added). *See also Wilson v. Collins,* 517 F.3d 421, 429 (6th Cir.2008) ("[T]he Sixth Circuit has held that the Constitution does not encompass a general right to nondisclosure of private information. Instead, the Sixth Circuit has continued to restrict the right of privacy to those rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.' ") (internal quotation marks and citations omitted); *Overstreet v. Lexington-Fayette Urban Cnty. Gov't,* 305 F.3d 566, 574 (6th Cir.2002) ("Since *DeSanti,* this Court has not strayed from its holding, and continues to evaluate privacy claims based on whether the interest sought to be protected is a fundamental interest or an interest implicit in the concept of ordered liberty.").[FN8]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 14

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
**(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))**

With regard to the dissemination of medical information, we have acknowledged that "a person possesses no reasonable expectation that his medical history will remain *completely* confidential[;][t]his is not to say that a person has no interest in protecting, to some extent, the confidentiality of his medical records." *In re Zuniga,* 714 F.2d 632, 641 (6th Cir.1983) (citing *Whalen,* 429 U.S. at 606-07). However, under our interpretation of privacy rights, we have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a "fundamental liberty interest" under the Constitution. *See, e.g., Summe v. Kenton Cnty. Clerk's Office,* 604 F.3d 257, 270-71 (6th Cir.2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Wilson,* 517 F.3d at 428-29 (state prisoner who brought a § 1983 action did not have a fundamental privacy interest in the information contained in his DNA profile retained in state and national DNA-indexing systems); *Jarvis v. Wellman,* 52 F.3d 125, 126 (6th Cir.1995) (disclosure of rape victim's medical records to an inmate by prison officials "does not rise to the level of a breach of a right recognized as 'fundamental' under the Constitution" so as to state cognizable § 1983 action); *In re Zuniga,* 714 F.2d at 642 (affirming the enforcement of a subpoena duces tecum issued by a grand jury, commanding psychotherapists to produce patient information); *Gutierrez v. Lynch,* 826 F.2d 1534, 1539 (6th Cir.1987) (city ordinance that required employees on sick leave for more than thirty days to complete a form providing the City with medical information was legitimate request and did not invade former employee's right to privacy); *Gen. Motors Corp. v. Dir. of Nat'l Inst. for Occupational Safety,* 636 F.2d 163, 165-66 (6th Cir.1980) (enforcement of a subpoena issued by the National Institute for Occupational Safety and Health for the production of medical records of automaker's employees, in conjunction with research on workplace health hazards, did not intrude upon protected privacy interests, where safeguards against the improper disclosure of the confidential information could be implemented).

**\*14** The present case is no different. Directive 3.07 § III(H)(1)(c), which requires an employee returning from sick leave to provide to the immediate supervisor a physician's note stating the "nature of the illness," does not implicate the preservation of life and personal security interests recognized in *Kallstrom,* or the interest in shielding sexuality and choices about sex, protected in *Bloch.* In short, it does not raise an informational-privacy concern of a constitutional dimension.

Moreover, as we have already noted, plaintiffs have no basis to challenge the Directive based on unwarranted speculation that their immediate supervisors will disobey it. Supervisors are obligated to follow the City's policies, which include express prohibitions against the disclosure of confidential information. *See Wilson,* 517 F.3d at 430 ("The hypothetical possibility of some future abuse does not substantiate a justiciable controversy.").

The district court therefore erred in entering judgment in favor of plaintiffs on their § 1983 claim and in denying defendant's cross-motion for summary judgment.

V.

For these reasons, we vacate the injunction and reverse and remand for the entry of a judgment in favor of the City on plaintiffs' claims brought under the Rehabilitation Act and § 1983.

> FN1. The individually named plaintiffs also asserted various claims for relief in their individual capacities under these federal statutes, as well as under the Family Medical Leave Act, the Declaratory Judgment Act, and Ohio law. These individual claims are not at issue in the present appeal, which involves only the plaintiffs as certified classes.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN2. The court denied plaintiffs' summary judgment motion to the extent plaintiffs argued that other subsections of Directive 3.07 § III, in addition to Directive 3.07 § III(H)(1)(c), were before the court for requested injunctive relief. The district court held that "considering any Directive other than Directive 3.07 § III(H) would in effect be allowing amendment to the complaint, which will not be permitted at this stage of these proceedings." Having found for plaintiffs on the merits of their claims, the district court concluded that defendants' summary judgment motion pertaining to plaintiffs' compensatory damages claim was moot.

FN3. The AARP has filed an amicus curiae brief in support of plaintiffs, focusing its argument on the Rehabilitation Act claim.

FN4. The ADA, on the other hand, proscribes discrimination "on the basis of disability[,]" 42 U.S.C. § 12112(a) (2009) or, before its amendment in 2008, "because of the disability."

FN5. The 2009 amendments to this section do not apply retroactively to this case. *See Spees,* 617 F.3d at 396.

FN6. As we explained in *E.E.O.C. v. Prevo's Family Market, Inc.,* 135 F.3d 1089 (6th Cir.1998):

> The statute clearly permits medical examinations but only in certain limited circumstances. The focus is on the nature of job relatedness and what constitutes a business necessity. The interpretative guidelines to the ADA explain that the statute was intended to prevent against "medical tests and inquiries that do not serve a legitimate business purpose." 29 C.F.R. § 1630.13(b) App. (1996).

*Id.* at 1094. *See also Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 812 (6th Cir.1999) ("While it is true that the ADA limits an employer's ability to request unfounded examinations to prevent the unwanted exposure of the employee's disability and stigma it may carry, an employer may order a well-founded examination.") (citation and internal quotation marks omitted).

FN7. However, finding that genuine issues of material fact existed regarding the defendant's affirmative defense of business necessity, the *Conroy* court remanded the matter to the district court for further proceedings. *Id.* at 97-102. On remand, the district court found that "[d]efendants have not demonstrated that the three-day absence general diagnosis inquiry requirement serves a business necessity" and, thus, "as the inquiry does not fall within the exception, and it is an inquiry which violates the ADA, plaintiff's cross-motion for summary judgment must be granted." *Fountain v. N.Y. State Dep't of Corr. Servs.,* No. 99-CV-389, 2005 WL 1502146, at *10 (N.D.N.Y. June 23, 2005) (unpublished).

FN8. Whether a broader right to nondisclosure of private information even exists remains an open question under the Supreme Court's recent jurisprudence, *NASA v. Nelson,* --- U.S. ----, 131 S.Ct. 746, ---L.Ed.2d ---- (2011). In *NASA,* the Court was confronted by the claims of government contractors that certain aspects of a background investigation violated their right to privacy. *Id.* at 751. Looking back to past cases, the Court noted that since the "waning days of the October Term 1976[,]" it has said "little else on the subject of an 'individual interest in avoiding disclosure of personal matters.'" *Id.* at

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 16

--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))
(Cite as: 2011 WL 611904 (C.A.6 (Ohio)))

756. In *NASA,* just as in *Whalen,* the Court then declined to address whether the right existed, and instead, assumed, without deciding, that the right existed. *Id.* at 757; *see also id.* at 764 (Scalia, J., concurring) (criticizing the Court's decision not to reach the question of whether the right exists and explaining that a right to "informational privacy" does not exist). Without any hint of approval for one approach over another, the Court also acknowledged the existence of "a number of different interpretations of *Whalen* and *Nixon* over the years[,]" including our Circuit's interpretation of the cases. *Id.* at 756 n. 9 (collecting cases from several circuits, including *J.P. v. DeSanti,* 653 F.2d 1080, 1090 (6th Cir.1981)). Thus, the Court has not provided us with any reason to take the opportunity to revisit our past precedents on this matter.

C.A.6 (Ohio),2011.
Lee v. City of Columbus, Ohio
--- F.3d ----, 2011 WL 611904 (C.A.6 (Ohio))

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.